```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| Lawrence Scott,<br><br>    Plaintiff,<br><br>  vs.<br><br>Infostaf Consulting, Inc. d/b/a<br>SourceDirect.com, Michael Roberts and<br>Troy Nini,<br><br>    Defendants.<br><br>AMBROSE, District Judge | Civil Action No. 09-1175 |

## OPINION
### and
## ORDER OF COURT

  This is a diversity case in which Plaintiff has brought state law claims against Defendants Infostaf Consulting, Inc. d/b/a SourceDirect.com ("Source Direct"), Michael Roberts ("Roberts"), and Troy Nini ("Nini") (collectively "Defendants") alleging breach of contract and violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. § 260.1, *et seq.* Plaintiff's claims arise from Defendants' alleged wrongful termination of Plaintiff's employment. Pending before the Court is Defendants' Motion for Partial Summary Judgment to Dismiss Count II of Plaintiff's Amended Complaint. (Docket No. 27). Plaintiff opposes Defendants' Motion. (Docket No. 30). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, Defendants' Motion for Partial Summary Judgment is denied.

### I. BACKGROUND

### A. Factual Background

  Unless otherwise indicated, the following material facts are undisputed.

  Source Direct is a company that provides services, products, and solutions for the

1

technology needs of its clients throughout the United States. Roberts is the President and Chief Executive Officer of Source Direct. Nini is the Vice President of Operations of Source Direct.

On February 1, 2008, Roberts sent an e-mail to Plaintiff regarding his potential employment by Source Direct. Roberts Decl. (Docket No. 29-1), Ex. 1. At the time, Plaintiff was employed by Hewlett Packard. Among other things, the e-mail stated "Larry, I am willing to give you a five (5) year employment contract. There is no way HP can do that and frankly Larry you should wonder what their intentions will be next year." Id. On or about February 5, 2008, Nini sent Plaintiff a letter setting forth an offer of employment ("Offer Letter"). Nini Decl. (Docket No. 29-2), Ex. 1. After setting forth details regarding proposed compensation and benefits for Plaintiff, the letter stated, *inter alia*, "Larry, given the quality of person that you are and the impact that we are confident you will have, SourceDirect.com will also provide you with a 5 year employment contract with mutually agreed upon terms." Id. The parties disagree as to whether and to what extent discussions were held with Plaintiff concerning this and other terms of his employment. Plaintiff admits, however, that although the parties intended to enter into a written employment contract, no such contract was ever drafted or signed.

Raul Guerra, Source Direct's National Sales Manager, states in his Declaration that Source Direct gave annual and quarterly sales objectives to Plaintiff. Guerra Decl. (Docket No. 29-3) ¶ 5. Plaintiff states that Source Direct did not communicate any such sales objectives to him until the July 2008 quarterly sales meeting. Pl. Decl. (Docket No. 30-1) ¶ 6. Plaintiff declares that Source Direct did not mention these objectives to him prior to his employment and that Source Direct specifically told him that no quotas or metrics would apply to his job performance. Id. ¶ 3. Plaintiff admits that he never attained the sales quotas, targets, and/or objectives Source Direct imposed after his employment commenced. Plaintiff also admits that during his employment, various individuals at Source Direct, including Roberts and Guerra, indicated dissatisfaction with Scott's sales activities and failure to meet the sales targets.

Plaintiff notes that Guerra also praised him at times for his sales and marketing activities.

On April 29, 2009, Guerra e-mailed a "60 Day Performance Warning" to Plaintiff. Guerra Decl. (Docket No. 29-3) ¶ 6 & Ex. 1. The Performance Warning informed Plaintiff, *inter alia*, that he must turn his below average sales performance around in 60 days or he would face serious disciplinary action up to and including termination. Id. The Performance Warning gave Plaintiff specific sales objectives ($400,000) to be met within the 60 days, changed aspects of Plaintiff's compensation, and required Plaintiff to acknowledge the Performance Warning by signing it and returning it to Source Direct. Id. On that same day, Plaintiff e-mailed Guerra in response indicating that he disagreed with signing the Performance Warning in the form submitted and provided reasons for his disagreement. Id. Ex. 2.[1] On May 4, 2009, Guerra, Usvolk, and Plaintiff again spoke by phone and Guerra e-mailed Plaintiff a second version of the Performance Warning. Id. ¶¶ 8-9 & Ex. 3. After the telephone conversation, Guerra e-mailed a third version of the Performance Warning to Plaintiff. Id. The third version asked Plaintiff to acknowledge the Performance Warning by signing and returning it to Source Direct by 5:00 p.m. the following day, May 5, 2009. Plaintiff signed and returned this third version of the Performance Warning via e-mail on the morning of May 5, 2009. Id. Ex. 4. On that same date, Guerra signed the "60 Day Performance Warning v3" on behalf of Source Direct. Id. Ex. 5.

The signed version of the Performance Warning provided, *inter alia*, as follows:

Larry,

As you are aware we are extremely concerned with your overall sales results for 2008 and the beginning 2009. You are officially being put under a 60 Day Performance Improvement Plan effective 5/4/09. The terms of this plan are as follows:

. . . .

---

[1] Plaintiff states that the e-mail only provides some of the reasons for his disagreement and that he provided additional reasons to Guerra in a telephone conversation with Guerra and Scott Usvolk. Pl. Decl. (Docket No. 30-1) ¶ 8.

- You will be responsible for closing a minimum of $350,000 in the next 60 days. . . .

. . . .

Our hope is that by focusing your attention to the task at hand which is growing the Pittsburgh customer base, your overall sales performance will increase to an acceptable level. We will work with you in any way possible to help you achieve your target number.

If your sales objective of closing a minimum of $350,000 in the next 60 days is not met you will be subject to further disciplinary action which may include any of the following:

. . . .

- Termination

During your tenure with Source Direct, you have been given specific performance metrics on a quarterly basis with clearly stated and defined expectations for sales results. Those metrics, including those outlined in this letter, constitute the terms, conditions, and performance metrics expected of you by Source Direct.

Please acknowledge with your understanding of this warning by signing and returning this document by 5:00pm central, 5/5/09:

*I have read this warning and have had the opportunity to discuss this with my manager. I understand that my failure to comply with the measures set forth in this letter will be grounds for disciplinary action up to and including termination of my employment with Source Direct. . . .*

Id. Ex. 5.

On June 23, 2009, Source Direct terminated Plaintiff's employment. Plaintiff had not attained the sales objectives set forth in the signed version of the Performance Warning as of that date. Source Direct cites Plaintiff's failure to attain these sales objectives as the reason for his discharge. The termination date, however, occurred only 49 days after Plaintiff signed the 60-Day Performance Warning v3.

### B. Procedural History

On or about September 18, 2009, Plaintiff filed an Amended Complaint against Defendants. (Docket No. 4). Defendants filed a Motion to Dismiss Count II of the Amended

Complaint (Breach of Contract) on October 7, 2009, on the grounds that the parties did not enter into a contract for a 5-year term of employment. (Docket No. 8). Plaintiff opposed the motion. (Docket No. 12). On November 6, 2009, I entered an Opinion and Order denying the motion to dismiss. (Docket No. 12). On November 23, 2009, Defendants filed an Answer to the Amended Complaint. (Docket No. 17).

On May 17, 2010, I extended the discovery deadline in this case to September 13, 2010. (Docket No. 24). On July 26, 2010, the parties filed a Consent Motion to Stay Discovery Pending Disposition of Motion for Partial Summary Judgment. (Docket No. 25). In the motion, Defendants indicated they intended to file a motion for partial summary judgment arguing that the 60 Day Performance Warning v3 amended and superseded any employment agreement Plaintiff may have had with Source Direct and that Plaintiff failed to meet the performance objectives set forth in the warning. Id. On July 28, 2010, I entered an amended order setting forth summary judgment deadlines and staying discovery pending further order of court.

On August 2, 2010, Defendants filed a Motion for Partial Summary Judgment to Dismiss Count II of Plaintiff's Amended Complaint (Breach of Contract), a Concise Statement of Material Facts, and Brief in Support. (Docket Nos. 27-29). On August 16, 2010, Plaintiff filed a Brief in Opposition and a Response to Defendant's Concise Statement of Material Facts. (Docket Nos. 30-31). On August 27, 2010, Defendants filed a Response to Plaintiff's additional material facts, exhibits in support, and Reply Brief. (Docket Nos. 32-35).

The motion is now ripe for my review.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322). With this standard in mind, I turn now to the issues of this case.

### B. Defendants' Motion for Partial Summary Judgment

In their motion for partial summary judgment, Defendants argue that even if Plaintiff had a five-year employment contract with Source Direct, which they deny, I may construe the 60 Day

6

Performance Warning v3 as part of the alleged employment agreement. Defendants further argue that the sales objectives contained in the 60 Day Performance Warning v3 stated terms of Plaintiff's employment and that Plaintiff's failure to meet those sales objectives provided lawful grounds for his termination. Defs.' Br. Supp. (Docket No. 28) at 5-7. Plaintiff disagrees, arguing that the 60 Day Performance Warning v3 (1) was unconscionable and, therefore, not binding on him or (2) that his failure to meet the sales quota set forth in the document does not constitute cause justifying his termination from employment because Source Direct terminated his employment before 60 days had passed. Pl.'s Br. Opp. (Docket No. 30). After careful review of the record evidence and the submissions of the parties, Defendants' Motion is denied.

In order to establish a cause of action for breach of contract in Pennsylvania, a plaintiff must show (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. Pennsy Supply Inc. v. American Ash Recycling Corp., 895 A.2d 595, 600 (Pa. Super. Ct. 2006). "A contract is formed if the parties agree on essential terms and intend them to be binding even though they intend to adopt a formal document with additional terms at a later date." Mastroni-Mucker v. Allstate Ins. Co., 976 A.2d 510, 522 (Pa. Super. Ct. 2009). The existence of a contract in the employment context is particularly important given the presumption in Pennsylvania that employment is at-will. See Knox v. Bd. of Sch. Dirs. of Susquenita Sch. Dist., 888 A.2d 640 (Pa. 2005). The doctrine of at-will employment "holds that an employer may terminate an employee for any reason at all, unless restrained by contract." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (citing Carlson v. Cmty. Ambulance Servs., Inc., 824 A.2d 1228, 1232 (Pa. Super. Ct. 2003)). A party may rebut the presumption of at-will employment by establishing "one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." Janis v. AMP Inc., 856 A.2d 140, 144 (Pa. Super. Ct. 2004).

If the parties intended to create a contract of "definite duration," then the employee may be discharged only for "just cause." Volks v. Pribonic, Civ. A. No. 94-2165, 1995 WL 360186, at *1 (W.D. Pa. Apr. 11, 1995) (Ambrose, J.) (citing Veno v. Meredith, 515 A.2d 571, 579 (Pa. Super. Ct. 1986)); Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1196 (Pa. Super. Ct. 1987).

Here, Plaintiff does not directly rebut Defendants' argument that the 60 Day Performance Warning v3 constituted additional terms and conditions of Plaintiff's alleged five-year employment agreement with Source Direct.[2] Rather, Plaintiff's first argument is that the performance warning was procedurally and substantively unconscionable and, therefore, unenforceable. My initial reaction is that this argument is without merit. As Plaintiff recognizes, Pennsylvania law requires both procedural and substantive unconscionability to invalidate an otherwise enforceable contract. See Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 265 (3d Cir. 2003). "Procedural unconscionability pertains to the process by which an agreement is reached and from the form of the agreement. . . . This element is generally satisfied if the agreement constitutes a contract of adhesion." Id. The element of substantive unconscionability is satisfied if there are terms of the agreement that "unreasonably favor one party to which the disfavored party does not truly assent." Id.

Based on the current record, it does not appear that a reasonable jury could find a contract of adhesion or other procedural unconscionability in this case. As Plaintiff states, a contract of adhesion "is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." Id.; see also Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 276 (3d Cir. 2004) (same); Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981) (procedural unconscionability is the "absence of meaningful choice on the part of one of the parties"). The key is whether the party challenging the agreement had

---

[2] The issue of whether the parties entered into a five-year employment agreement is not specifically before me, and I previously denied Defendants' Motion to Dismiss on this issue. Accordingly, I assume for purposes of this motion only that such an agreement did exist.

8

any meaningful choice regarding acceptance of its terms. Thibodeau v. Comcast Corp., 912 A.2d 874, 886 (Pa. Super. Ct. 2006). Even an adhesionary contract is enforceable unless it is "so one-sided as to be oppressive." Brennan v. CIGNA Corp., 282 F. App'x 132, 136 (3d Cir. 2008); see also Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 229 (3d Cir. 1997) (mere inequality of bargaining power does not render a contract term unenforceable).

In this case, it is undisputed that Plaintiff objected to the initial version of the performance warning and that Source Direct provided three versions of the warning to Plaintiff before he signed the final version. Although Plaintiff e-mailed a signed copy of the third version of the warning the morning after receiving it, this occurred at least *five* days after receiving the first version. Based on these undisputed facts, it is difficult to see how a reasonable jury could find that Plaintiff did not have a meaningful choice or that Source Direct presented the contract to Plaintiff on a take-it-or-leave-it basis.

It is not necessary to rule definitively on this issue, however, because even absent unconscionability, there are issues of material fact as to whether Source Direct terminated Plaintiff's employment based on his failure to meet the sales objectives set forth in the 60 Day Performance Warning v3. Assuming for purposes of this motion that Plaintiff had an employment agreement for a definite five-year term, Source Direct needed "just cause" before terminating that employment. Even if Plaintiff's failure to satisfy the terms of the 60 Day Performance Warning v3 would constitute just cause, Source Direct admittedly terminated Plaintiff's employment 11 days prior to the expiration of 60 days. Without additional evidence regarding the circumstances surrounding the termination date or the reason(s) why Source Direct did not wait the full 60 days, I cannot enter summary judgment in favor of Defendants on Plaintiff's breach of contract claim at this juncture. If appropriate, Defendants may readdress this issue in another motion for summary judgment on a more fully developed record after discovery.

### III. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment to Dismiss Count II of Plaintiff's Amended Complaint is denied without prejudice. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Lawrence Scott, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 09-1175 |
| Infostaf Consulting, Inc. d/b/a SourceDirect.com, Michael Roberts and Troy Nini, | ) | |
| Defendants. | ) | |
| AMBROSE, District Judge | | |

## ORDER OF COURT

AND NOW, this 28th day of September, 2010, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendants' Motion for Partial Summary Judgment to Dismiss Count II of Plaintiff's Amended Complaint (Docket No. 27) is denied. It is further ordered that the stay of discovery is lifted and that the parties shall complete discovery in this matter by November 1, 2010. A Pretrial/Settlement conference is scheduled for November 2, 2010 at 1:00 p.m. before the undersigned in Courtroom 3B of the U.S. Post Office & Courthouse, 700 Grant Street, Pittsburgh, Pennsylvania. Counsel shall have settlement authority, and parties are to be either present or available by telephone. Because the parties have had six months to conduct discovery, no further extensions will be granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. District Judge